RHODES *versus* LEEDS.

1. Where A requested B to write to C, and request the latter to furnish D with goods, and he, A, would pay for them; and B, with A's consent, wrote to his agent, representing A to be solvent; and the agent applied to C, and procured the goods to be furnished—held, that A could not avoid the payment, on the ground, that the promise, not being in writing, was within the statute of frauds.

2. Under the statute of frauds, a promise by A, to pay the debt of B, (to be obligatory,) must be in writing, *wherever the credit is given to B.*

3. But, if the credit, in the first instance, is given to A, although the consideration passes to B—it is an original undertaking by A; and he is bound, although there is no writing.

This was an action for goods, sold and delivered, and was brought in Mobile Circuit court, by Leeds, against Rhodes. The plaintiff, to sustain his action, proved, that the defendant had requested one Williams to write to the plaintiff, and induce the latter to furnish one Dobson with the goods; for which he, the defendant, would pay. Williams, instead of writing directly to the plaintiff, wrote to one Vincent, who, having applied, verbally, to the plaintiff, on the representations of Vincent, furnished the goods. The defendant moved the court, to charge the jury, that this evidence brought the plaintiff's claim within the statute of frauds—which the court refused; and judgment was had for the plaintiff.

*Acre*, for the plaintiff—*Hitchcock, contra.*

TAYLOR, J.—The only proceeding, in the court below, assigned as error, is the charge contained in the bill of exceptions. It appears, that the defendant

RHODES *vs.* LHEDS.

below, (the plaintiff here,) requested one Williams, to write to the plaintiff, who lived in New Orleans, to furnish a Capt. Dobson, with such iron castings as he needed, and he would pay for them. Williams replied, that " he would not write to the plaintiff; but, that he would write to one Capt. Vincent, who would represent him," (Williams.) - That Williams did write to Vincent, representing Rhodes, as a responsible man ; and, Vincent applied to Leeds, to furnish the castings; and "Leeds informed him, that, on his, (Vincent's) representations, which were verbal, and not written, or contained in the letter, he would furnish the castings ; and, that he had furnished them, on such representations."

"The defendant, Rhodes, moved the court, to charge the jury, that, the promise, or undertaking of the defendant, was within the statute of frauds, and they ought to find for him. The court refused to give the charge, as prayed—but, charged the jury, that it was not within the statute of frauds."

The statute of frauds, so far as it is brought into consideration, by this case, is in the following words, viz : "That no action shall be brought, whereby to charge the defendant upon any special promise, to answer for the debt, default, or miscarriage, of another person; unless the promise or agreement, upon which such action shall be brought, or some memorandum, or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person, by him, thereunto lawfully authorised."

The uniform, and obviously correct decisions, under this statute, have been, that if credit is given to A—a promise, by B, to pay the debt, must be in writ-

ing, to be obligatory; but, if the credit, in the first instance, is given to B, although the consideration passes to A, it is an original undertaking by B, and he is bound to perform it, although there is no writing.

In the case before us, was the credit given to Rhodes, or to Dobson? There can not be the shadow of doubt on this subject. The castings were purchased by Rhodes, to be delivered to Dobson, it is true; but, that was perfectly immaterial to the vendor. It is not the destination of the article purchased, which determines the responsibility of the person sued; but, it is whether the debt be his own, or that of a third person. In this instance, it was obviously the debt of Rhodes, and not of Dobson. It does not appear, that Dobson was known, or his responsibility thought of, by Leeds; but, it does fully appear, that he furnished the castings, because, from the representations of Williams, through Vincent, he was satisfied of the ability of Rhodes, to pay for them.

Let the judgment be affirmed.